STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CU 0929

BLAKE H. TUMMINELLO

VS.

DANIELLE M. CLARK

Judgment Rendered: ___DEC 2 9 2022___

* * * * *

On Appeal from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
No. 2019-15523

The Honorable Patrice W. Oppenheim, Judge Presiding

* * * * *

Jesmin Basanti Finley
Angela Cox Williams
Slidell, Louisiana

Attorneys for Appellee
Blake H. Tuminello

Tammy Karas Griggs
Covington, Louisiana

Attorney for Appellant
Danielle M. Clark

* * * * *

BEFORE: McDONALD, McCLENDON, AND HOLDRIDGE, JJ.

**HOLDRIDGE, J.**

This is an appeal of a custody judgment designating a domiciliary parent, maintaining a "2-2-3" physical custody schedule, designating the parish where the child would attend school, and modifying the physical custody schedule when the child begins attending school. We affirm in part and vacate in part.

## FACTS AND PROCEDURAL HISTORY

Blake H. Tumminello and Danielle M. Clark had a child, G.T., born on September 17, 2019. On October 21, 2019, Mr. Tumminello filed a petition seeking joint custody with Ms. Clark designated as the domiciliary parent and "50/50 shared custody," alleging that both parties lived in the Covington and Mandeville area. On January 6, 2020, Mr. Tumminello filed an amended petition to seek a paternity judgment declaring that he was G.T.'s biological father. He alleged that since his initial custody filing, Ms. Clark's living arrangements had become "unstable." While he still sought joint custody, he asked that he be designated as the domiciliary parent, subject to reasonable custodial periods for Ms. Clark.

Ms. Clark answered the petition and filed a reconventional demand on January 6, 2020, seeking joint custody with herself designated as the domiciliary parent and Mr. Tumminello having frequent visitation.[1] She denied that she was domiciled in St. Tammany Parish, alleging that she had been residing in Jefferson Parish since November of 2019.

The parties appeared at a hearing officer conference on January 21, 2020, and they agreed to a 2-2-3 custody schedule. The hearing officer's recommendations were that the parties have joint custody reserving the right to each party "to request the designation of a domiciliary parent without prejudice to either party." On February 5, 2020, the hearing officer's recommendations were made temporary orders of the court pending a February 19, 2020 hearing, which was later continued.

---

[1] Both parties sought child support in their petitions, but that matter is not before us on appeal.

2

Ms. Clark objected to the hearing officer recommendations as to the physical custody award and the failure to designate her as the domiciliary parent.

When the matter came before the court on June 23, 2020, the parties entered into a stipulation. In the stipulated judgment signed by the trial court on July 20, 2020, Mr. Tumminello was declared to be the legal father of G.T. The parties were awarded joint custody with no designation of a domiciliary parent. The judgment stated: "Each party reserves the right to request the designation of a domiciliary parent without prejudice to either party." The parties were to continue to follow the 2-2-3 custody schedule.[2] The September 14, 2020 rule date for the separate child support issue was to serve as a status hearing with the court to determine if the stipulated judgment was being adhered to or if the trial on the domiciliary designation needed to be reset.[3]

On February 19, 2021, Ms. Clark filed a rule to modify custody, seeking to be designated the domiciliary parent and to be awarded primary physical custody with Mr. Tumminello having physical custody every other weekend. Ms. Clark alleged that there were material changes of circumstances in that Mr. Tumminello's mother, Karen Tumminello, cared for G.T. when Mr. Tumminello had physical custody and she also conducted the custody exchanges on his behalf. Ms. Clark alleged that when they entered the stipulated judgment, Mr. Tumminello was working customary hours, but he had since been working shift work, resulting in G.T. being shuffled between numerous homes in different cities at all hours. According to Ms. Clark,

---

[2] The judgment also provided that the parties were to jointly schedule any medical appointments except in an emergency and to use Our Family Wizard as their primary form of communication; additionally, they agreed to a daily FaceTime call at 6:30 p.m. The judgment provided that the parties were not to post any derogatory comments on social media and that only the parties were to be referred to as "daddy" or "mommy."

[3] According to the minute entry for that date, the matter was continued until October 14, 2020. The minute entry for that date does not include specific information as to the stipulated judgment.

3

G.T. was experiencing sleep issues, specifically that he had regressed from sleeping through the night in his crib to screaming and defecating on himself. [4]

On August 17, 2021, Mr. Tumminello filed an answer and reconventional demand alleging that there were material changes in the circumstances affecting G.T. such that it was in G.T.'s best interest for him to be declared the domiciliary parent. Mr. Tumminello alleged that Ms. Clark made medical appointments without checking with him or at times when he was working, that she did not communicate with him, and that he accommodated her requests for changes in pickups, drop offs, or custodial days, but she did not reciprocate. Mr. Tumminello also sought to hold Ms. Clark in contempt for posting derogatory comments about him on social media and referring to her boyfriend as G.T.'s father, for failing to communicate directly with him, and for failing to jointly schedule medical appointments.

The hearing officer held a conference on September 27, 2021, and issued her recommendations on September 30, 2021. She recommended that Ms. Clark be designated as the domiciliary parent and that an order issue that Ms. Clark not post or allow a third party to post on social media derogatory comments about Mr. Tumminello. The hearing officer recommended that all of the parties' other requests be denied. On October 6, 2021, the trial court signed a temporary order adopting the hearing officer's recommendations.

Ms. Clark objected to the hearing officer's recommendations and filed an amended rule to modify custody on March 25, 2022. In the amended rule to modify custody, she reiterated her previous allegations and also alleged that Mr. Tumminello made "decisions that are not in [G.T.'s] best interests merely out of spite towards [Ms. Clark]." She specifically referred to an incident on March 2,

---

[4] Mr. Tumminello filed a "Peremptory Exception of No Cause of Action, Vagueness and Ambiguity." We note that the objection of no cause of action is raised by a peremptory exception and the objection of vagueness and ambiguity is raised by a dilatory exception. See La. C.C.P. arts. 926, 927. Mr. Tumminello contended that Ms. Clark failed to allege a material change of circumstances to modify custody as the matters she alleged were present at the time of the initial judgment and/or only affected her, not G.T. He also alleged that Ms. Clark's request to modify custody was vague and ambiguous. The trial court denied the exceptions.

4

2022, where Ms. Tumminello was picking up G.T. to bring him to Mr. Tumminello, but Ms. Clark wanted G.T. to stay at her house because he was sick. According to Ms. Clark, Mr. Tumminello refused and G.T. vomited in Ms. Tumminello's car and required medical attention. She also alleged that she should be the domiciliary parent "to enroll [G.T.] in school." She sought to be designated the domiciliary parent with primary physical custody of G.T. with Mr. Tumminello having custody every other weekend.

Mr. Tumminello also objected to the hearing officer's recommendations, alleging that she did not hear any testimony from him as to his request to modify custody and that she erred in denying his motion for contempt.

The trial court held a hearing on the parties' motions on April 19, 2022, and signed a judgment on May 2, 2022. The judgment designated Mr. Tumminello as the domiciliary parent. The judgment stated "that until [G.T.] ... enters Kindergarten, or earlier if the parties agree to enroll [G.T.] in Pre-K4, the parties shall continue to exercise joint and shared custody following the current 2-2-3 physical custody schedule outlined in the July 20, 2020 Stipulated Judgment." The judgment stated that "[G.T.] shall be enrolled in school in St. Tammany Parish." It continued that "upon [G.T.] beginning Kindergarten or Pre-K4, the physical custody schedule shall be modified to [Ms. Clark] ... exercising physical custody every other weekend from Thursday at 5:30 p.m. to Monday morning to school during the school year and the parties shall exercise a week on/ week off custody during the summer months."[5] The trial court made "no finding of contempt."

On appeal, Ms. Clark raises five assignments of error. In her first assignment of error, she contends that the trial court erred in declining to follow the hearing officer's recommendations and in designating Mr. Tumminello as a domiciliary

---

[5] The trial court vacated the provision in the stipulated judgment requiring joint scheduling of and attendance at G.T.'s doctor's appointments. The court also ordered that all communication "shall be between the parties" and also ordered that any licensed driver could assist with the pickups and drop-offs of G.T.

parent. In her second assignment of error, Ms. Clark contends that the trial court abused its discretion in maintaining the parties' 2-2-3 physical custody schedule. In her third assignment of error, Ms. Clark contends that the trial court erred in ruling that G.T. should attend school in St. Tammany Parish. In her fourth assignment of error, Ms. Clark contends that the trial court committed legal error and abused its discretion in failing to determine if a material change of circumstances occurred in prematurely restricting Ms. Clark's time when G.T. attends school. In her fifth assignment of error, Ms. Clark contends that the trial court erred in limiting her custodial time to every other weekend when G.T. begins school.

## DISCUSSION

Each child custody case must be viewed in light of its own particular set of facts and circumstances, with the paramount consideration being the best interest of the child. La. C.C. art. 131; **Moore v. Prater**, 2021-1430 (La. App. 1 Cir. 6/3/22), 342 So.3d 994, 998. The trial court is in the best position to ascertain the best interest of the child given the unique circumstances of the particular case; thus, the trial court's custody determination is entitled to great weight and will not be disturbed on appeal unless an abuse of discretion is clearly shown. **Moore**, 342 So.3d at 998.

In this case, the parties were awarded joint custody in the July 20, 2020 stipulated judgment. When joint custody is ordered, La. R.S. 9:335 governs the details of the custody arrangement, including physical custody, as well as the legal authority and responsibility of the parents, providing, in pertinent part:

> A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
>
> (2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
>
> (b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.

. . .

6

(3) The implementation order shall allocate the legal authority and responsibility of the parents.

B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.

(2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.

(3) The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.

C. If a domiciliary parent is not designated in the joint custody decree and an implementation order does not provide otherwise, joint custody confers upon the parents the same rights and responsibilities as are conferred on them by the provisions of Title VII of Book I of the Civil Code.

The language of La. R.S. 9:335 illustrates that the paramount consideration in establishing the details of the custody arrangement, just as in the determination of whether joint custody is appropriate, is the best interest of the child. **Moore**, 342 So.3d at 999. The trial court enjoys great procedural flexibility in crafting a custody arrangement tailored to the specific facts and circumstances of the individual case that promotes the child's best interest. **Id**. at 999-1000; see also La. C.C. art. 131.

Louisiana Civil Code article 134(A) provides a non-exclusive list of factors that the trial court shall consider, along with any other relevant factors, in determining the best interest of the child.[6] The weight to be given each factor is left

---

[6] Louisiana Civil Code article 134(A) states:

Except as provided in Paragraph B of this Article [cases involving a history of family violence or domestic abuse], the court shall consider all relevant factors in determining the best interest of the child, including:

(1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.

(2) The love, affection, and other emotional ties between each party and the child.

to the discretion of the trial court. **Moore**, 342 So.3d at 1000. In making its determination, the trial court is not bound to make a mechanical evaluation of all the statutory factors listed in Article 134, but should decide each case on its own facts in light of those factors. See **Id**. Nor is the trial court required to specifically explain its weighing and balancing of the Article 134 factors. **Id**. at 1001. Rather, the trial court should decide each case on its own facts and circumstances in light of Article 134 and other relevant factors. **Id**.

Additionally, in most child custody cases, the family court's determination is based heavily on factual findings. When presented with two permissible views of the evidence, the trial court's choice between them cannot be manifestly erroneous or clearly wrong. **Stobart v. State through Department of Transportation and**

---

(3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(6) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(7) The moral fitness of each party, insofar as it affects the welfare of the child.

(8) The history of substance abuse, violence, or criminal activity of any party.

(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

8

**Development,** 617 So.2d 880, 883 (La. 1993). Furthermore, it is well-settled that where there is a conflict in testimony, the trial court's reasonable evaluations of credibility and reasonable inferences of fact are not to be disturbed by a reviewing court. **Moore,** 342 So.3d at 1001. If documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible that a reasonable fact finder would not credit it, the reviewing court may find manifest error or clear wrongness, even in a finding purportedly based upon a credibility determination. But in the absence of such factors, where the finding is based on the trial court's decision to credit the testimony of one party over the other, the finding can virtually never be manifestly erroneous or clearly wrong. **Rosell v. ESCO,** 549 So.2d 840, 844-45 (La. 1989). One court has observed:

> In child custody cases where two parents are fervently competing for custody and domiciliary status of the children, frequently the trial court must determine the best interest of the children solely from the testimony of the parents and their respective relatives or friends. This naturally passionate and self-interested testimony is rarely objective, leaving it to the trial court, who is in the best position to view firsthand the demeanor and tone of the witnesses, to assess the credibility of the witnesses, and decide how much weight to give the testimony in light of the factors in [Article] 134.

**Fuller v. Fuller,** 54,098 (La. App. 2 Cir. 7/21/21), 324 So.3d 1103, 1104, writ denied, 2021-01223 (La. 9/27/21), 324 So.3d 621.

Where, as here, the underlying custody decree is a stipulated judgment, a party seeking a modification must prove that: (1) there has been a change in circumstances materially affecting the welfare of the child since the previous custody decree was entered; and (2) the proposed modification is in the best interest of the child. **Yepez v. Yepez,** 2021-0477 (La. App. 1 Cir. 12/22/21), 340 So.3d 36, 42. We note however, that in this case, the parties reserved their rights to request the designation of a domiciliary parent without prejudice to either party. Therefore, the parties were not required to show a material change in circumstances in seeking to be designated the domiciliary parent; however, they did need to establish that the designation of the domiciliary parent was in the best interest of G.T. As to Ms. Clark's request for

9

a modification in the physical custody, she was required to show a material change in circumstances and that the proposed modification was in G.T.'s best interest since the stipulated judgment set forth the physical custody schedule. See **Cedotal v. Cedotal**, 2005-1524 (La. App. 1 Cir. 1/14/05), 927 So.2d 433, 436.

At the hearing on the motions to modify custody and for contempt, Ms. Clark and Mr. Tumminello testified at the hearing and both parties entered evidence.[7] Ms. Clark testified that she was born and raised in Westwego, Louisiana, then lived in Covington, Louisiana, from April to November of 2019, and then moved to Marrero, Louisiana, in November of 2019. She resided with her fiancé, Travis Berkesch, in the home he owned, along with G.T. and her one-year-old daughter. Ms. Clark had been with Mr. Berkesch since July of 2019. She and Mr. Berkesch had planned an October 2022 wedding, which they later cancelled. They had not reset a wedding date.

Mr. Tumminello testified that he was living in Mandeville in his family home where he had lived for about twenty-nine years. His mother, Ms. Tumminello, was living in Slidell at the time of the hearing. Mr. Tumminello's girlfriend of three and a half years also lived with him. Mr. Tumminello testified that on December 9, 2021, he began working as the market manager for ServePro from nine until five Monday through Friday in Slidell, New Orleans, and the Westbank occasionally. Before that, he worked at Domino Sugar Refinery from about March 9, 2020, until September 25, 2021. He was terminated from Domino and had two other disciplinary issues, one for absences and one for a coder missing on a box. Mr. Tumminello testified that he was wrongfully terminated from Domino and he was pursuing a grievance through the union and an EEOC claim.

At the time of the hearing, Ms. Clark testified that she was licensed to babysit up to six children (including her own two children) in her home from Monday

---

[7] Mr. Tumminello attempted to have Ms. Tumminello testify via Zoom but technical problems prevented her from testifying.

through Friday from drop-off in the morning until 2:30 p.m. at the latest. She testified that she was caring for a four-month old, a six-month old, a twenty-month old, and a two-year old. According to Ms. Clark, she was laid off from her previous job with Clariant in December of 2021.

Ms. Clark testified that when it was time to enroll G.T. in pre-K4 in 2023, she planned to enroll him at Congetta Trippe Janet, a school in her subdivision in walking distance from her home. She testified that the school continued through eighth grade, it had a "B" rating, and her daughter would go there too. Ms. Clark testified that when she was pregnant with G.T., she and Mr. Tumminello had discussed their desire to raise G.T. in St. Tammany Parish partly because the schools were better there and also because there was a good family support system there with Mr. Tumminello's family. Ms. Clark testified that she planned on having G.T. attend private school for high school.

In oral reasons for judgment, the trial court stated that it considered all of the factors listed in La. C.C. art. 134(A) and found them "all to be neutral," then stated that it would "focus on only two of them." In considering the history of criminal activity of any party under La. C.C. art. 134(A)(8), the trial court noted that Mr. Tumminello had a 2010 criminal conviction, but stated there was no other evidence of any criminal activity on his part.[8] The trial court then commented on La. C.C. art. 134(A)(12), the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the child and the other parent. The trial court stated, "I've considered the testimony and made my credibility findings." The trial court then specifically remarked on the lack of cooperation between the parties. According to the trial court, Ms. Clark "especially, believes that she's in charge; she needs to make the decisions, scheduling stuff." The trial court pointed out that for

---

[8] Mr. Tumminello testified that he had a 2010 conviction for simple burglary. He initially "pled out to an agreement to where I would do the six months boot camp; but when I got to the boot camp, they told me that I had diabetes, that I couldn't compete in it. So I wind up having to do four years on 10." He further testified he was off of probation.

11

G.T.'s first haircut, Mr. Tumminello should have been invited to attend as opposed to Ms. Clark's fiancé. The trial court also referred to Ms. Clark making medical appointments at times that Mr. Tumminello could not always attend. The trial court noted that Ms. Clark had another child, a one year old, and that while she was operating her in-home day care, she was taking care of up to four other children from the ages of four months to almost two years old at the same time she took care of G.T. and her other child.

In Ms. Clark's first assignment of error, she contends that the trial court erred in designating Mr. Tumminello as the domiciliary parent. She argues that the trial court's ruling is not in G.T.'s best interest and is factually erroneous. Ms. Clark asserts that the trial court erred in focusing on two factors under La. C.C. art. 134 and in failing to follow the hearing officer's recommendation that she be designated the domiciliary parent. Ms. Clark points out that because the hearing officer's recommendation that she be designated the domiciliary parent was made a temporary order of the court, she was "in charge" from October 6, 2021, until the April 19, 2022 hearing. She also asserts that because the trial court failed to find her in contempt, its finding that she failed to cooperate with Mr. Tumminello is erroneous.

We have carefully reviewed the record in considering Ms. Clark's contentions. As earlier noted, the weight to be given each of the factors listed in La. C.C. art. 134 is left to the discretion of the trial court. See **Moore**, 342 So.3d at 1000. Moreover, the trial court is not bound to follow the hearing officer's recommendation. See La. R.S. 46:236.5(C)(6).[9] In determining that the best interest of G.T. was served by designating Mr. Tumminello as the domiciliary parent, the trial court focused on the willingness and ability of each parent to facilitate and

---

[9] Louisiana Revised Statutes 46:236.5(C)(6) states, in pertinent part, "The objection shall be heard by the judge of the district court to whom the case is assigned. Upon filing of the objection, the court shall schedule a contradictory hearing where the judge shall accept, reject, or modify in whole or in part the findings of the hearing officer.

12

encourage a close and continuing relationship between G.T. and the other parent. See La. C.C. art. 134(A)(12). In determining that Ms. Clark was not as willing to encourage such a relationship between G.T. and Mr. Tumminello, the trial court specifically noted that Ms. Clark did not invite Mr. Tumminello to attend G.T.'s first haircut, but did include her fiancé, and that Ms. Clark also made medical appointments at times Mr. Tumminello could not attend.

While the temporary order of the court did designate Ms. Clark as the domiciliary parent from October 6, 2021 through April 19, 2022, as the domiciliary parent she was still required to follow the parties' 2020 stipulated judgment. The stipulated judgment required "that both parents shall jointly schedule any and all medical appointments of the minor child, absent an emergency. The joint scheduling shall be done to ensure both parents['] attendance at the medical appointment unless otherwise agreed to by the parties in writing." Moreover, the stipulated judgment further provided several co-parenting guidelines that they "shall follow," including a requirement that they "share information with each other about the child in a timely and cooperative manner. This information shall include, but is not limited to medical, educational, social, psychological, and religious aspects of the child's [life]." The stipulated judgment required the parents to exchange information with each other about "all of their child's activities and schedule: school, sports, social, etc., to insure their proper and consistent attendance and to encourage and facilitate each parent's involvement and attendance when appropriate." According to the stipulated judgment, "All communication regarding the child shall be between the parents." The stipulated judgment provided that the parents were to discuss with each other major non-emergency decisions concerning the child before either one made an independent decision. Thus, while she was temporarily the domiciliary parent, Ms. Clark was required to share information with Mr. Tumminello, to discuss major decisions with him, and to communicate directly with him.

13

In finding that Mr. Tumminello should be designated the domiciliary parent, the trial court found that it was in G.T.'s best interest based on the testimony and evidence indicating that he was more able to fulfill the role. We cannot say that the trial court manifestly erred in its factual findings. In addition to the trial court's findings about G.T.'s medical appointments and his first haircut, Ms. Clark testified that when she had an issue with G.T. while in her care, she told Mr. Tumminello or his mother, Ms. Tumminello. She admitted that no one forced her to communicate with Ms. Tumminello and added, "I'm not going to text [Mr. Tumminello] while he's at work checking on [G.T.] or vice versa." Mr. Tumminello testified that he did not send messages to Ms. Clark through his mother, but he communicated directly with Ms. Clark. Mr. Tumminello testified that he wanted to keep up Ms. Clark's relationship with G.T., but he did not "feel like she communicates with me and ... like she wants me out of the picture."

When asked if she had let Mr. Tumminello know when G.T. took his first steps, she testified that she could not remember. Mr. Tumminello testified that he shared pictures of G.T. while he was in his care with Ms. Clark. While Ms. Clark complained that Mr. Tumminello had not informed her about changes in his work schedule, she admitted that she did not tell him about her job changes or that she was operating an in-home daycare. Mr. Tumminello also testified that he had advised Ms. Clark that his work schedule had changed and when he was terminated from his prior job; he also introduced into evidence text messages to Ms. Clark informing her of these matters. Ms. Clark testified that she had not discussed the school issue with Mr. Tumminello because she knew he wanted G.T. to go to school in St. Tammany Parish. Mr. Tumminello testified that during his preparations and evacuation for Hurricane Ida with G.T., he kept Ms. Clark updated on his plans

Mr. Tumminello introduced messages on Our Family Wizard to support his testimony that he relayed his medical concerns about G.T. to Ms. Clark. According to Mr. Tumminello, Ms. Clark "occasionally" and "very seldom" relayed G.T.'s

medical information to him. Mr. Tumminello testified about the incident where G.T. threw up in Ms. Tumminello's vehicle. According to Mr. Tumminello, Ms. Clark did not inform him that G.T. was sick before the exchange. Ms. Tumminello was on a four-lane expressway in traffic when G.T. threw up so that it would have been difficult for her to turn around to go back to Ms. Clark's home. Mr. Tumminello was waiting to take G.T. to Urgent Care when Ms. Tumminello reached him. Therefore, Ms. Clark's first assignment of error has no merit.

In Ms. Clark's second assignment of error, she contends that the trial court erred in maintaining the 2-2-3 physical custody schedule. Unlike the determination of which parent should be designated as the domiciliary parent, the physical custody schedule was considered in the parties' stipulated judgment. Therefore, to obtain the modification of the physical custody schedule she sought, Ms. Clark had the burden of showing a material change in circumstances and that the modification was in G.T.'s best interest. See **Yepez**, 340 So.3d at 42.

We cannot say that the trial court abused its discretion in maintaining the 2-2-3 custody schedule because Ms. Clark did not prove that there was a material change in circumstances and that the modification was in G.T.'s best interest. Ms. Clark contends that G.T.'s sleep and behavioral issues, his being in his grandmother's care while Mr. Tumminello had physical custody, and the incident with G.T. throwing up during a custody exchange warrant a change in the custody schedule. Initially, we note that Ms. Clark attributed G.T.'s sleep and behavioral issues to Mr. Tumminello's shift work, but at the time of the hearing he was no longer working shift work. Mr. Tumminello testified that he worked for Servpro mainly in Slidell from Monday through Friday from 8:00 a.m. to 5:00 p.m. Ms. Tumminello did provide child care while Mr. Tumminello was at work, but he testified that he took care of G.T. the remainder of the time and also went to his mother's house for lunch with G.T. two to three times a week. Moreover, at the time the parties entered into the 2020 stipulated judgment, Ms. Tumminello had been taking care of G.T. while

Mr. Tumminello worked. Ms. Tumminello drove G.T. to the custody exchanges with Ms. Clark because Ms. Clark requested that they exchange G.T. at 4:00 p.m. while Mr. Tumminello was working instead of at 6:00 p.m. when he was off of work. Lastly, the parties agreed to a 2-2-3 custody schedule in the stipulated judgment when Ms. Clark was living in Marrero and Mr. Tumminello was living in Mandeville. Ms. Clark's second assignment of error has no merit.

Ms. Clark's third, fourth, and fifth assignments of error concern the trial court's ruling that G.T. should attend school in St. Tammany Parish and the ensuing changes in the physical custody schedule when that happens. We note that the only time the issue of G.T.'s schooling was raised in the parties' pleadings was in Ms. Clark's amended motion to modify custody when she alleged that she should be designated as the domiciliary parent to enroll G.T. in school. At the time Ms. Clark filed the amended motion and at the time of the hearing, G.T. was about two and a half years old. At the beginning of the trial court's hearing, the court noted that the matters before it were Ms. Clark's motion and amended motion to modify custody and Mr. Tumminello's motion to modify custody and for contempt. Mr. Tumminello objected to the amended motion because it was filed after the motion deadline. The trial court did not rule on the objection prior to the hearing.

Ms. Clark raised the issue of G.T.'s schooling in conjunction with her request to be designated domiciliary parent. Mr. Tumminello did not raise this issue. Once the trial court designated him as the domiciliary parent and not Ms. Tumminello, the trial court erred in considering the issues of G.T.'s schooling and the change in physical custody that might ensue. G.T. was around two and a half years old when these motions were litigated and, at that point in time, would not be attending pre-K4 until the school year in 2023, and kindergarten until the 2024 school year. Moreover, only if both parties agree (at some unspecified time) does G.T. attend Pre-K4, for which attendance is not mandatory. See La. R.S. 17:221. The circumstances surrounding the parties' and G.T.'s lives easily could change in the intervening time,

but at the time of the motions and the hearing, Ms. Clark did not demonstrate a material change in circumstances. Therefore, the trial court abused its discretion in designating the parish in which G.T. would attend kindergarten and in modifying the future physical custody schedule on that basis. Accordingly, that portion of the judgment as to G.T.'s school choice and the resultant custodial arrangements should be vacated. Ms. Clark's third, fourth, and fifth assignments of error have merit.

## CONCLUSION

We affirm that part of the May 2, 2022 judgment designating Blake H. Tumminello as the domiciliary parent. We vacate the following parts of the judgment concerning G.T.'s schooling: "that until [G.T.] … enters Kindergarten, or earlier if the parties agree to enroll [G.T.] in Pre-K4, the parties shall continue to exercise joint and shared custody following the current 2-2-3 physical custody schedule outlined in the July 20, 2020 Stipulated Judgment"; that "[G.T.] shall be enrolled in school in St. Tammany Parish;" and "upon [G.T.] beginning Kindergarten or Pre-K4, the physical custody schedule shall be modified to … [Ms. Clark] exercising physical custody every other weekend from Thursday at 5:30 p.m. to Monday morning to school during the school year and the parties shall exercise a week on/ week off custody during the summer months." Costs of this appeal are to be split equally between Blake H. Tumminello and Danielle M. Clark.

**AFFIRMED IN PART, VACATED IN PART.**